UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| ANN HORNBY,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>INTEGRATED PROJECT MANAGEMENT, INC., et al.,<br><br>　　　　　　　Defendants.<br>_____/ | No. C 14-04331 LB<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND, DECLINING TO RULE ON MR. GEORGIADES AND MR. PIEHL'S MOTION TO DISMISS, AND DENYING PLAINTIFF'S REQUEST FOR ATTORNEYS' FEES**<br><br>[Re: ECF Nos. 9, 10] |

**INTRODUCTION**

In this action, plaintiff Ann Hornby sued her former employer, defendant Integrated Project Management, Inc. ("IPM"), and her former supervisors, defendants Harry Georgiades and Richard Piehl, in state court for claims arising out of the conditions and termination of her employment. (*See* Garcia Decl., Ex. A, ECF No. 2-1 at 5-18 ("Complaint").[1]) Defendants removed the action to federal court on the ground that there is complete diversity between the parties because she fraudulently joined Mr. Georgiades and Mr. Piehl. (*See* Notice of Removal, ECF No. 2 at 2-4.) Mr. Georgiades and Mr. Piehl now move to dismiss the two claims that Ms. Hornby brings against them, and Ms. Hornby moves to remand the action to state court. (*See* Motion to Dismiss, ECF No. 9; Motion to Remand, ECF No. 10.) Pursuant to Civil Local Rule 7-1(b), the court found this matter

---

[1] Record citations are to documents in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

suitable for determination without oral argument. Because the court finds that Mr. Georgiades and Mr. Piehl have not met their burden to show that Ms. Hornby cannot possibly recover from them, the court grants Ms. Hornby's motion to remand and, given the court's lack of subject-matter jurisdiction over the action, declines to rule on Mr. Georgiades and Mr. Piehl's motion to dismiss. The court also denies Ms. Hornby's request for attorneys' fees.

## STATEMENT

Ms. Hornby, who is a 62-year-old California citizen, worked for IPM, which is an Illinois corporation, as a Project Manager Consultant from April 2011 until July 1, 2013. (Complaint ¶¶ 3-4, 14.[2]) During her first year with IPM, she reported directly to Mr. Georgiades, who is a California citizen and resident and was IPM's Director of Regional Operations, and Kim Pham, IPM's Regional Operations Manager. (*Id.* ¶¶ 6, 16.) She received a satisfactory performance review on October 4, 2011; she was commended for making a positive first impression at IPM. (*Id.* ¶ 18.) On February 20, 2012, she was awarded a substantial performance bonus for her work in 2011. (*Id.* ¶ 20.) On April 4, 2012, she received a "good" performance review, which stated, "After a year with IPM, [Ms. Hornby] has a solid understanding of IPM's value of customer service and project management excellence." (*Id.* ¶ 21.)

On October 16, 2012, Ms. Pham was promoted to the position of Business Development Executive, so Monroe Hatch took over as Regional Operations Manager. (*Id.* ¶ 22.) In October or November 2012, Ms. Hornby was praised by "Defendants" for "quickly provid[ing] value and produc[ing] high quality deliverables" for a client on a particular project. (*Id.* ¶ 23.) On April 4,

---

[2] Ms. Hornby asks the court to take judicial notice of her Complaint and Defendants' Notice of Removal, both of which were filed in this action. (*See* Request for Judicial Notice, ECF No. 10-2.) The court does not need to do so because these documents are already in the record. *See Johnson v. Haight Ashbury Med. Clinics, Inc.*, No. C-11-02052-YGR, 2012 WL 629312, at *1 (N.D. Cal. Feb. 27, 2012) (denying a request for judicial notice "because it is unnecessary to take judicial notice of documents in the record in this action"); *Martinez v. Blanas*, No. 2:06-cv-0088 FCD DAD (PC), 2011 WL 864956, at *1 n.1 (E.D. Cal. Mar. 10, 2011) ("Defendant's request for judicial notice of the second amended complaint will be denied as unnecessary. The second amended complaint and its exhibits are a part of the record in this action."). The court therefore denies Ms. Hornby's request for judicial notice. To the extent that the documents are relevant and are appropriate for the court to consider, the court can consider them.

UNITED STATES DISTRICT COURT
For the Northern District of California

2013, she received another "good" performance review, this time from Mr. Georgiades and Mr. Hatch. (*Id.* ¶ 24.)

That same day, Mr. Piehl, who is a California citizen and resident, replaced Mr. Hatch as Regional Operations Manager and became Ms. Hornby's new direct supervisor. (*Id.* ¶ 25.) And during that same month, Mr. Piehl assigned Ms. Hornby to a new project: working with Jenny Zhong, a project manager at Genentech. (*Id.* ¶ 26.) According to Ms. Hornby, Ms. Zhong has a long history of being difficult to work with and being abusive to IPM's Project Manager Consultants. (*Id.*) The turnover rate of IPM Project Manager Consultants who are assigned to work with her has been high. (*Id.*) Indeed, two previous IPM Project Manager Consultants who had been assigned to work with Ms. Zhong are no longer with IPM because of the difficulty working with Ms. Zhong and catering to her demands. (*Id.*)

As such, Ms. Zhong's reputation as a difficult client is well recognized within IPM generally and by Mr. Georgiades and Mr. Piehl specifically. (*Id.* ¶ 27.) In fact, Mally Arad, a one-time IPM Regional Operations Manager, and Ms. Pham both recommended to Mr. Georgiades that Ms. Hornby not be assigned to work with Ms. Zhong because such an assignment would not be a "good fit" for Ms. Hornby. (*Id.* ¶ 28.)

Despite these recommendations, Mr. Georgiades and Mr. Piehl "deliberately set [Ms. Hornby] up for failure" by assigning her to work with Ms. Zhong, as they knew that Ms. Hornby would not be able to meet Ms. Zhong's demands. (*Id.* ¶ 29.) Throughout the assignment, Ms. Hornby communicated to "Defendants" on multiple occasions that Ms. Zhong's demands would be more appropriately fulfilled by one of IPM's Subject Matter Experts, as Ms. Zhong often expected Ms. Hornby to perform duties that were beyond the role of a Project Manager Consultant generally and beyond Ms. Hornby's specific knowledge. (*Id.* ¶ 31.) "Defendants," however, failed to take any action on her communications and "never gave her the appropriate support to succeed in her assignment with Ms. Zhong." (*Id.* ¶ 32.) Specifically, "Defendants" never provided her with the necessary assistance during her assignment with Ms. Zhong, whether through training, mentoring, or the assignment of a Subject Matter Expert. (*Id.* ¶ 33.) Instead, Mr. Piehl "would make comments to [Ms. Hornby] on the basis of her age . . . that she was too slow at learning the systems and projects

she was assigned to." (*Id.* ¶ 34.) Nevertheless, Ms. Hornby tried to meet Ms. Zhong's demands by working very long hours and learning a vast and new subject area in a short time. (*Id.* ¶ 35.)

After working with Ms. Zhong for one or two stressful months, Ms. Hornby's fibromyalgia symptoms, which had been dormant for 13 years, reappeared, and by late May 2013 they had become so severe that she had to seek medical attention. (*Id.* ¶ 37.) She scheduled an appointment with her doctor for the morning of May 28, 2013. (*Id.*) On May 24, 2013 (four days before her medical appointment), Mr. Piehl told Ms. Hornby that she was to meet with him on the afternoon of May 28, 2013 to discuss her assignments. (*Id.* ¶ 38.)

On the morning of May 28, 2013, Ms. Hornby's doctor told her that her fibromyalgia "had flared up" and recommended that she take a two-and-a-half-week leave of absence from work to rest. (*Id.* ¶ 39.) While she was at the doctor's office, Mr. Piehl sent Ms. Hornby an email that included a performance review. (*Id.* ¶ 40.) The review gave her a "transitional" performance rating and stated that she must "improve her 'average' performance and begin to 'wow' her clients." (*Id.*) The review stood in contrast to the "good" rating and positive comments about her performance that were made in April 4, 2013 performance review. (*Id.* ¶ 41.)

After she returned from seeing her doctor, Ms. Hornby presented Mr. Piehl with a letter from her doctor that requested that Ms. Hornby be placed on medical leave until June 14, 2013. (*Id.* ¶ 42.) Shortly thereafter, Ms. Hornby was called into a meeting with Mr. Piehl, Mr. Georgiades, and IPM's Chief Financial Officer, JoAnn Jackson, who attended by telephone. (*Id.* ¶ 43.) During the meeting, Ms. Hornby was given a letter, which was signed by Mr. Piehl, stating that Ms. Hornby's "talents [we]re not a good fit with IPM requirements." (*Id.*) It also stated that Ms. Zhong "has asked that [Ms. Hornby] transition [her] responsibilities to an internal [project manager]." (*Id.*) It further stated that "[w]hen Ms. Zhong indicates that your time is no longer required, we will use that date as your last date of employment." (*Id.*)

Ms. Hornby went on her medical leave starting that day. (*Id.* ¶ 45.) Her doctor later recommended that she extend her medical leave until July 1, 2013, so Mr. Hornby submitted a request to that effect to "Defendants" on June 10, 2013. (*Id.* ¶ 46.) Mr. Piehl sent an email to Ms. Hornby on June 12, 2013 that did not respond to her request to extend her medical leave but instead

stated that her assignment with Ms. Zhong was to be terminated. (*Id.* ¶ 47.) "Defendants" finally granted her request to extend her medical leave on June 19, 2013. (*Id.* ¶ 48.)

On June 25, 2013, Ms. Jackson (IPM's CFO) mailed Ms. Hornby a letter terminating Ms. Hornby's employment effective July 1, 2013 (the day Ms. Hornby's medical leave was scheduled to end). (*Id.* ¶ 49.)

Ms. Hornby filed suit against IPM, Mr. Georgiades, and Mr. Piehl in San Mateo County Superior Court on August 26, 2014. (*See generally* Complaint.) She essentially alleges that Mr. Georgiades and Mr. Piehl assigned her to work with Ms. Zhong knowing that she would fail and that they did this to discriminate against her on the basis of her age and force her out of her job. (*Id.* ¶ 30.) Thus, she alleges the following claims, all of which arise under state law: (1) age and disability discrimination in violation of California's Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12940 *et seq.*; (2) retaliation in violation of FEHA; (3) harassment based on age and disability in violation of FEHA; (4) wrongful termination in violation of public policy; (5) failure to prevent discriminatory practices in violation of FEHA; (6) failure to accommodate a disability in violation of FEHA; (7) failure to engage in the interactive process of disability accommodation in violation of FEHA; and (8) negligence (including negligent infliction of emotional distress). (*Id.* ¶¶ 54-105.) Ms. Hornby brings all of these claims against IPM, and she brings her third claim for harassment and her eighth claim for negligent infliction of emotional distress against Mr. Georgiades and Mr. Piehl as well. (*Id.*)

On September 25, 2014, Defendants removed the action to federal court on the ground that Ms. Hornby fraudulently joined Mr. Georgiades and Mr. Piehl to defeat diversity jurisdiction, and if the court ignores them, complete diversity exists. (*See* Notice of Removal, ECF No. 2 at 2-4.) Mr. Georgiades and Mr. Piehl now move to dismiss the harassment and negligent infliction of emotional distress claims that Ms. Hornby brings against them. (*See* Motion to Dismiss, ECF No. 9.) Ms. Hornby opposes the motion to dismiss, and in turn she moves to remand the action back to state court. (*See* Motion to Remand, ECF No. 10.) She also requests attorneys' fees. (*See id.* at 17.) On December 15, 2014, the court determined that these motions are suitable for determination without oral argument and took them under submission. (*See* 12/15/2014 Clerk's Notice, ECF No. 18.)

## ANALYSIS

### I. MR. GEORGIADES AND MR. PIEHL ARE NOT FRAUDULENTLY JOINED

Because the court must have subject-matter jurisdiction over this action to rule on Defendants' motion to dismiss, the court first considers Ms. Hornby's motion to remand. In it, she argues that Defendants' assertion of the court's diversity jurisdiction fails. Defendants' assertion of diversity jurisdiction is based on their contention that Mr. Georgiades and Mr. Piehl were fraudulently joined to this action and thus should be ignored for diversity jurisdiction purposes. Ms. Hornby contends that she have sufficiently alleged (or at least can sufficiently allege, upon amendment) claims against Mr. Georgiades and Mr. Piehl and therefore they were not fraudulently joined. The court agrees with Ms. Hornby.

Under 28 U.S.C. § 1441(a), a defendant may remove to federal court any matter that originally could have been filed in federal court. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). Federal courts are courts of limited jurisdiction and possess subject matter jurisdiction in civil cases based only on federal question or diversity jurisdiction. *Id.*; *see* 28 U.S.C. §§ 1331, 1332. To invoke diversity jurisdiction in an action involving United States citizens, the complaint must allege that "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States . . . ." 28 U.S.C. § 1332(a)(1).

The parties do not dispute that the amount in controversy requirement is met, but they do dispute whether the action is between citizens of different states. The Supreme Court has interpreted 28 U.S.C. § 1332(a) to require "complete diversity of citizenship"—that is, each of the plaintiffs must be a citizen of a different state than each of the defendants. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996); *see Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001). In addition, under 28 U.S.C. § 1441(b), an action which otherwise meets the criteria for diversity jurisdiction under 28 U.S.C. § 1332 may not be removed "if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2). "This 'forum defendant' rule 'reflects the belief that [federal] diversity jurisdiction is unnecessary because there is less reason to fear state court prejudice against the defendants if one or more of them is from the forum state.'" *Spencer v. U.S. Dist. Court for N. Dist. of Ca.*, 393 F.3d

867, 870 (9th Cir. 2004) (quoting Erwin Chemerinsky, Federal Jurisdiction § 5.5, at 345 (4th ed. 2003)). It is "thus clear that the presence of a local defendant at the time removal is sought bars removal." *Id.*

Although Ms. Hornby, Mr. Georgiades, and Mr. Piehl all are citizens and residents of California, Defendants maintain that Mr. Georgiades's and Mr. Piehl's presence does not defeat the requirement of complete diversity or trigger the forum defendant rule because they were fraudulently joined. While diversity jurisdiction under 28 U.S.C. § 1332 ordinarily requires complete diversity of the parties, removal is proper despite the presence of a non-diverse or resident defendant when that defendant was fraudulently joined. *See Lewis*, 519 U.S. at 68; *McCabe v. Gen. Foods*, 811 F.2d 1336, 1339 (9th Cir. 1987) (a fraudulently jointed defendant will not defeat diversity jurisdiction). In the Ninth Circuit, if a plaintiff "fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent." *McCabe*, 811 F.2d at 1339. There is a strong presumption against fraudulent joinder, and a defendant who asserts it "carr[ies] a heavy burden of persuasion." *Lieberman v. Meshkin, Mazandarani*, C-96-3344 SI, 1996 WL 732506, at *2 (N.D. Cal. Dec.11, 1996) (citing *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990)). "Indeed, [a defendant] must show to 'a near certainty' that joinder was fraudulent and that 'plaintiff has *no actual intention to prosecute* an action against [that] particular resident defendant[]." *Osorio v. Wells Fargo Bank*, No. C 12-02645 RS, 2012 WL 2054997, at *2 (N.D. Cal. June 5, 2012) (quoting *Diaz v. Allstate Ins. Group*, 185 F.R.D. 581, 586 (C.D. Cal. 1998) (emphasis in original) (citing *Boyer*, 913 F.2d at 111)); *see also Lewis v. Time, Inc.*, 83 F.R.D. 455, 466 (E.D. Cal. 1979), aff'd, 710 F.2d 549 (9th Cir. 1983). And "[i]n ruling on a motion for remand where fraudulent joinder is alleged, a court must evaluate the factual allegations in the light most favorable to the plaintiff, resolving all contested issues of fact in favor of the plaintiff." *Medrano v. Genco Supply Chain Solutions*, No. 1:10-cv-01555-LJO-SKO, 2011 WL 92016, at *3 (E.D. Cal. Jan. 11, 2011) (citing *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003)).

"The defendant seeking removal to the federal court is entitled to present the facts showing the joinder to be fraudulent." *McCabe*, 811 F.2d at 1339 (citing *Smith v. S. Pac. Co.*, 187 F.2d 397 (9th

Cir. 1951)). A non-diverse defendant is deemed to be fraudulently joined if, after all disputed questions of fact and all ambiguities in the controlling state law are resolved in the plaintiff's favor, the plaintiff could not possibly recover against the party whose joinder is questioned. *See Kruso v. Int'l Tel. & Tel. Corp.*, 872 F.2d 1416, 1426 (9th Cir. 1989). "[T]o establish that there has been no fraudulent joinder, a plaintiff need only have one potentially valid claim against a non-diverse defendant" to survive a fraudulent joinder challenge. *Knutson v. Allis-Chalmers Corp.*, 358 F. Supp. 2d 983, 993-94 (D. Nev. 2005) (collecting cases). Accordingly, a defendant seeking removal based on an alleged fraudulent joinder must do more than show that the complaint at the time of removal fails to state a claim against the non-diverse defendant. *See Burris v. AT & T Wireless, Inc.*, No. C 06-02904 JSW, 2006 WL 2038040, at *2 (N.D. Cal. July 19, 2006) (citing *Nickelberry v. DiamlerChrysler Corp.*, No. C-06-1002 MMC, 2006 WL 997391, at *1-2 (N.D. Cal. Apr. 17, 2006) (remanding action where defendant failed to demonstrate that the plaintiff would not be given leave to amend to cure the pleading deficiency regarding the alleged sham defendant)). "Remand must be granted unless the defendant shows that the plaintiff 'would not be afforded leave to amend his complaint to cure [the] purported deficiency.'" *Padilla v. AT & T Corp.*, 697 F. Supp. 2d 1156, 1159 (C.D. Cal. 2009) (quoting *Burris*, 2006 WL 2038040, at *2 ).

Here, Defendants argue that Ms. Hornby's claims against Mr. Georgiades and Ms. Piehl both fail as a matter of law. The court considers Ms. Hornby's FEHA harassment claim first. California Government Code § 12940(j) makes harassment illegal and requires an employer to take immediate and appropriate action against it. The provision provides in relevant part:

> It is an unlawful employment practice, unless based upon a bona fide occupational qualification, or, except where based upon applicable security regulations established by the United States or the State of California: . . . (j)(1) For an employer . . . or any other person, because of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, or sexual orientation, to harass an employee, an applicant, or a person providing services pursuant to a contract. Harassment of an employee, an applicant, or a person providing services pursuant to a contract by an employee, other than an agent or supervisor, shall be unlawful if the entity, or its agents or supervisors, knows or should have known of this conduct and fails to take immediate and appropriate corrective action.

Cal. Gov't Code § 12940(j)(1). "[H]arassment on any basis prohibited by the FEHA includes (but is not limited to) *verbal harassment*, including 'epithets, derogatory comments or slurs on a basis

enumerated in the Act'; *physical harassment*, including 'assault, impeding or blocking movement, or any physical interference with normal work or movement, when directed at an individual on a basis enumerated in the Act'; and *visual harassment*, including 'derogatory posters, cartoons, or drawings on a basis enumerated in the Act.'" *Miller v. Dep't of Corrections*, 36 Cal. 4th 446, 461 (Cal. 2005) (quoting 2 Cal. Code Regs. § 7287.6(b)(1)(A), (B) & (c), which since have been renumbered as 2 Cal. Code Regs. § 11019(b)(1)(A), (B) & (c)) (italics in original). Employers and non-employer individuals alike may be liable for harassment violations under § 12940(j). *See Fitzsimons v. California Emergency Physicians Medical Group*, 205 Cal. App. 4th 1423, 1427-28 (Cal. Ct. App. May 16, 2012). For instance, "an individual employee of an entity subject to FEHA can be held personally liable for harassing behavior that is outside or extraneous to his job duties." *Medrano*, 2011 WL 92016, at *4 (citing § 12940(j)).

To violate FEHA, though, the harassment must be "sufficiently severe or pervasive to alter the conditions of the victim's employment." *Etter v. Veriflo Corp.*, 67 Cal. App. 4th 457, 465 (Cal. Ct. App. 1998) (internal quotation marks and citations omitted). "California courts look to several factors in determining whether conduct is so severe or pervasive to violate the FEHA, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Niami v. Fed. Express Print Servs., Inc.*, No. C 09-4384 JF, 2010 WL 958045, at *6 (N.D. Cal. Mar. 12, 2010) (citing *Miller*, 36 Cal. 4th at 462). "The severity of conduct 'should not be viewed too narrowly' and must be considered in light of 'the social context in which particular behavior occurs and is experienced by its target.'" *Id.* (quoting *Lyle v. Warner Bros. Television Prod.*, 38 Cal. 4th 264, 283 (Cal. 2006)). And "[w]ith respect to the pervasiveness of harassment, courts have held an employee generally cannot recover for harassment that is occasional, isolated, sporadic, or trivial; rather, the employee must show a concerted pattern of harassment of a repeated, routine, or a generalized nature." *Lyle*, 38 Cal. 4th at 283-84 (citations omitted).

Here, Defendants first argue that Ms. Hornby's allegations, even if true, do not reflect age or disability discrimination at all. They say that Mr. Piehl's comment that Ms. Hornby was "too slow

at learning the systems and projects she was assigned to" has nothing to do with Ms. Hornby's age or disability. Such a comment, they say, could easily be made to a young or able-bodied employee who is struggling on the job. Defendants also say that Mr. Georgiades and Mr. Piehl's failure to provide Ms. Hornby with training or mentoring or to reassign her away from Ms. Zhong, and their giving of a negative performance rating to Ms. Hornby, also had nothing to do with Ms. Hornby's age or disability; they could have done these things to a young or able-bodied employee, too.

While Defendants' version of what happened is plausible, Ms. Hornby alleges otherwise, and in this situation, the court must evaluate the factual allegations in the light most favorable to her. *See Medrano*, 2011 WL 92016, at *3. And in that regard, context matters. *See Lyle*, 38 Cal. 4th at 283. Ms. Hornby alleges the following: she was an employee in good standing before being assigned to work with Ms. Zhong; Mr. Georgiades and Mr. Piehl knew that Ms. Zhong was particularly difficult to work with and had been told by others that Ms. Hornby would not be a good fit for that assignment; she asked for further training and help but Mr. Georgiades and Mr. Piehl would not give it to her; she considered Mr. Piehl's comments to be related to her age and disability; right after her fibromyalgia flared up and only two months after her previous good performance review, she received a negative performance review; and right after she returned from her medical leave, she was fired. In this context, when Mr. Piehl's comments are not considered in isolation but instead are considered along with the personnel actions taken, the court believes that Ms. Hornby's version of what happened is plausible, too. *See Roby v. McKesson Corp.*, 47 Cal 4th 686, 708-09 (Cal 2009) (official employment actions can form part of the evidentiary basis of a harassment claim).

Defendants also argue that even if the complained-of comments and acts were based on Ms. Hornby's age and disability, there were not severe or pervasive enough to constitute harassment. They say that Mr. Piehl's single comment, even when considered along with her allegations that she was assigned to a difficult client and received a negative performance review, simply demonstrates "occasional, isolated, sporadic, or trivial" behavior that does not rise to the level of harassment. *See Lyle*, 38 Cal. 4th at 283-84. Once again, Defendants view Ms. Hornby's allegations too narrowly. *See Miller*, 36 Cal. 4th at 462 (evidence of harassment "should not be viewed too narrowly"; instead, it "should be judged from the perspective of a reasonable person in the plaintiff's position," after

1  "considering all of the circumstances," including "the social context in which particular behavior
2  occurs and is experienced") (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81-82
3  (1998)).  Ms. Hornby does not simply allege that she was assigned to work with a difficult client;
4  she alleges Mr. Georgiades and Mr. Piehl assigned her to work with a difficult client, knowing that
5  she would fail, because they wanted to get rid of her.  And she does not simply allege that she
6  received a negative performance review; she alleges that she had a history of receiving good
7  performance reviews and it was only after she had been set up to fail, and after her fibromyalgia
8  flared up, that she reviewed a negative performance review and thereafter was fired upon her return
9  from medical leave.  These acts took place over several months and, as alleged, were all related and
10 eventually resulted in Ms. Hornby's termination.  The court cannot say as a matter of law that the
11 acts do not rise to the level of harassment.

12     This is especially true given that the court looks to Ms. Hornby's allegations, which are to be
13 viewed most favorably to her, at this stage of the proceedings.  The action is not at the summary
14 judgment stage, where all of the evidence is in and can be considered, as was the case in the
15 opinions cited by Defendants as examples of where courts have found allegedly harassing behavior
16 to be lacking in severity or pervasiveness.  *See Faragher v. City of Boca Raton*, 524 U.S. 775, 783-
17 84 (1998) (the plaintiff appealed the district court's entry of judgment in favor of the defendant
18 city); *Etter*, 67 Cal. App. 4th at 459-60 (the plaintiff appealed after judgment was entered against
19 him after trial).  Perhaps the evidence will support Mr. Georgiades and Mr. Piehl.  At this time,
20 though, the court believes that Ms. Hornby has alleged enough.

21     Based on the above, the court finds that Ms. Hornby has at least "one potentially valid claim
22 against a non-diverse defendant," *Knutson*, 358 F. Supp. 2d at 993-94, and thus Defendants have not
23 met their heavy burden to show that she could not possibly recover against Mr. Georgiades or Mr.
24 Piehl.  Because this is the case, the court finds that Mr. Georgiades and Mr. Piehl were not
25 fraudulently joined and that the court lacks diversity jurisdiction over this action.  The action must
26 be remand back to state court.

27     Because the court finds that Ms. Hornby has at least a potentially valid claim against Mr.
28 Georgiades and Mr. Piehl for harassment, the court does not need to determine whether her claim

against them for negligent infliction of emotional distress is similarly so. All that is required is that she have one potentially valid claim against them. The court also believes this is appropriate in light of the court's declination to rule on Mr. Georgiades and Mr. Piehl's motion to dismiss due to the lack of subject-matter jurisdiction. *See infra*.

## II. GIVEN ITS LACK OF SUBJECT-MATTER JURISDICTION, THE COURT DECLINES TO RULE ON MR. GEORGIADES AND MR. PIEHL'S MOTION TO DISMISS

Because the court finds that it lacks subject-matter jurisdiction over this action, the court declines to rule on Mr. Georgiades and Mr. Piehl's motion to dismiss. *Cf. Special Invs., Inc. v. Aero Air, Inc.*, 360 F.3d 989, 995 (9th Cir. 2004) ("There is no conceivable basis, once it was determined that the case should be remanded for lack of subject matter jurisdiction, for leaving in place the earlier dismissal while declining to rule on the pending motion to dismiss for lack of personal jurisdiction."). To the extent procedurally allowed, Mr. Georgiades and Mr. Piehl may challenge the sufficiency of Ms. Hornby's claims in state court.

## III. THE COURT DENIES MS. HORNBY'S REQUEST FOR ATTORNEYS' FEES

On the last page of her motion to remand, Ms. Hornby asks the court to award her reasonable attorneys' fees under 28 U.S.C. § 1447(c), which provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Awarding fees in this situation is discretionary, and they may be awarded only if such an award is "just." *See Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136, 138 (2005). The United States Supreme Court has expressly articulated the legal standard to be used when considering whether an award is "just":

> . . . [T]he standard for awarding fees should turn on the reasonableness of the removal. Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied. *See*, *e.g.*, *Hornbuckle*, 385 F.3d, at 541; *Valdes v. Wal–Mart Stores, Inc.*, 199 F.3d 290, 293 (C.A.5 2000). In applying this rule, district courts retain discretion to consider whether unusual circumstances warrant a departure from the rule in a given case. For instance, a plaintiff's delay in seeking remand or failure to disclose facts necessary to determine jurisdiction may affect the decision to award attorney's fees. When a court exercises its discretion in this manner, however, its reasons for departing from the general rule should be "faithful to the purposes" of awarding fees under § 1447(c). *Fogerty*, 510 U.S., at 534, n.19, 114 S.Ct. 1023; *see also Milwaukee v. Cement Div., National Gypsum Co.*, 515 U.S. 189, 196, n.8, 115 S.Ct. 2091, 132 L.Ed.2d 148 (1995) ( "[A]s is always the case when an issue is

committed to judicial discretion, the judge's decision must be supported by a circumstance that has relevance to the issue at hand").

*Id.* at 141.

Here, although the court has found that Ms. Hornby did not fraudulently join Mr. Georgiades or Mr. Piehl, the validity of her harassment claim was a close call. The court cannot say that Defendants' removal lacked an objectively reasonable basis. Accordingly, the court denies Ms. Hornby's request for attorneys' fees.

## CONCLUSION

Based on the foregoing, the court grants Ms. Hornby's motion to remand, declines to rule on Mr. Georgiades and Mr. Piehl's motion to dismiss, and denies Ms. Hornby's request for attorneys' fees.

**IT IS SO ORDERED.**

Dated: December 22, 2014

_____
LAUREL BEELER
United States Magistrate Judge